**Mates BRUNER & Fania Bruner, Plaintiffs–Appellants,**

v.

**CITY OF ST. LOUIS, Defendant–Respondent.**

**No. 62464.**

Missouri Court of Appeals, Eastern District, Division Two.

May 11, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 10, 1993.

Application to Transfer Denied Aug. 17, 1993.

Gretchen Hardy Myers, The Hullverson Law Firm, St. Louis, for plaintiffs-appellants.

Robert E. Keaney and Christina Rush, Moser, Marsalek & P.C., St. Louis, for defendant-respondent.

CRANDALL, Presiding Judge.

Plaintiffs, Mates Bruner and Fania Bruner, appeal from the trial court's grant of summary judgment in favor of defendant, City of St. Louis. We reverse and remand.

On March 24, 1988, plaintiff,[1] Mates Bruner, alighted from a commercial airliner at Lambert–St. Louis International Airport (airport). Defendant, City of St. Louis (City), owned and operated the airport. Upon entering the airport terminal, plaintiff stepped onto a moving walkway. The walkway was level and moved at a speed of 120 feet per minute, a little faster than walking speed. Plaintiff was with family members. He was five feet two inches tall. He was looking straight ahead and was standing close to the person in front of him

---

1. For the sake of clarity, we refer to plaintiff, Mates Bruner, in the singular form because the action of plaintiff's wife, Fania Bruner, is derivative of his action.

on the walkway. The moving walkway suddenly ended, throwing plaintiff onto his side. As a result of the fall, he sustained severe injury to his hip.

Plaintiff had been in airports previously and had ridden on other moving walkways. He anticipated not only that he would be given some type of warning that the end of the walkway was near but also that the walkway would be longer.

Plaintiff brought an action against City and later against Montgomery Elevator Company (Elevator Company). Plaintiff's Third Amended Petition alleged in pertinent part:

3. Said speed ramp was not reasonably safe for invitees and customers of the airport in that there was no warning, or an inadequate warning, as the user approached the end of the speed ramp.

4. The speed ramp presented a dangerous condition for those approaching the end of the ramp, whose sight and/or view of the end of the ramp was obscured or blocked by other individuals, by luggage or other objects.

5. The speed ramp was dangerous and defective in the way it was manufactured or installed in that it leads a user to believe that the end of the floor of the ramp extends the same distance as the hand rail.

6. The defendants knew or by using ordinary care should have known of these conditions.

7. The defendants failed to use ordinary care to warn or to adequately warn customers and invitees of the airport that the end of the speed ramp was approaching, either by visual warnings or by constructing the speed ramp in such a way that no warning was necessary or to remedy its defect.

City filed a motion for summary judgment. Elevator Company filed a separate motion to dismiss. The trial court granted summary judgment in favor of City, but overruled Elevator Company's motion to dismiss. Plaintiff then filed a motion to reconsider the grant of summary judgment in favor of City, and submitted the affidavit of an expert witness to support its

contention that the walkway in question presented a dangerous condition in that there was no warning that it was going to end. The trial court denied plaintiff's motion for rehearing, granted summary judgment in favor of City, found no just reason for delay, and designated its ruling on City's motion for summary judgment final for purposes of appeal. *See* Rule 74.01(b).

Before addressing the substantive issues on appeal, we consider City's procedural challenges. City first contends that plaintiff's motion to reconsider was untimely. The trial court entered summary judgment in favor of City on April 27, 1992 and plaintiff's "Motion to Reconsider" was filed on May 19, 1992. The court ruled on the motion to reconsider on July 16, 1992. City argues that the lapse of more than fifteen days between the court's grant of summary judgment and plaintiff's filing his motion to reconsider rendered plaintiff's motion untimely. *See Saunders–Thalden and Associates, Inc. v. Thomas Berkeley Consulting Engineer, Inc.*, 825 S.W.2d 385, 388 (Mo.App.1992). The case before us, however, does not involve a situation where the original grant of summary judgment was a final judgment. Rule 74.01(b) provides as follows:

Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and *the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.*

(emphasis added). When plaintiff filed his motion to reconsider, Elevator Company remained a party to the action and the court had not determined that there was "no just reason for delay." In the absence of that determination, plaintiff's motion to reconsider could have been filed at any time before entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties. Plaintiff's motion to reconsider was therefore timely filed.

■ City next asserts that plaintiff's failure to respond in any way to City's motion for summary judgment meant that plaintiff conceded the facts of the case, so that there were no issues of material fact for trial. *See* Rule 74.04(e). We do not agree. Here, City supported its motion for summary judgment with plaintiff's deposition; plaintiff later submitted its expert's affidavit in support of his motion for reconsideration. The trial court entertained plaintiff's motion to reconsider and ruled thereon. Because the court reconsidered its ruling on City's motion for summary judgment and had before it supporting documentation at the time, it is immaterial that plaintiff did not submit supporting documentation when City moved for summary judgment.

We now turn to the substantive issue on appeal: whether the trial court erred in granting summary judgment in favor of City. Both parties maintain that the court granted summary judgment on the basis that the moving walkway did not constitute a dangerous condition about which City must warn.[2]

In ruling on a motion for summary judgment, the trial court and the appellate court must scrutinize the record in the light most favorable to the party against whom the judgment was rendered. *Taylor v. Union Elec. Co.*, 826 S.W.2d 57, 58 (Mo.App. 1992). Summary judgment shall be entered if there is no genuine issue as to any material fact and the moving party is enti-

tled to judgment as a matter of law. Rule 74.04(c). "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp., d/b/a George Walker's Earth City Marine*, 854 S.W.2d 371, 382 (Mo. banc 1993). In negligence cases, summary judgment is not as feasible as in other kinds of cases. *Miller v. River Hills Development*, 831 S.W.2d 756, 763 (Mo. App.1992).

Plaintiff seeks to impose liability on City on the basis that City owned and operated the airport in which the moving walkway was installed. He therefore analyzes the duty owed to him by City in terms of premises liability.

■ The owner/occupier of the premises owes an invitee the duty to exercise reasonable, affirmative care to make the premises safe for that invitee. *Cox v. J.C. Penney Co., Inc.*, 741 S.W.2d 28, 29 (Mo. banc 1987). The owner/occupier has the duty to warn of dangerous conditions which are not likely to be discovered by the invitee. *Id.* The owner/occupier must inspect the premises to discover possible dangerous conditions of which he does not know. *Id.* However, an open and obvious danger dispenses with the duty to warn, unless the owner/occupier should anticipate harm despite constructive knowledge on the part of the invitee. *Id.* (citing Restatement of Torts, Second, Section 343(A)). To impose liability on the owner/occupier, the invitee must therefore prove that a condition existed on the premises that was not reasonably safe; that the owner/occupier knew, or by using ordinary care, should have known of this condition; and that the owner/occupier failed to use ordinary care to remove, remedy, or warn of the dangerous condition. *See* MAI 22.03.

■ Here, the questions of whether the moving walkway with the abrupt ending

---

**2.** City did not designate this theory, or any other alternative theory, as the ground on which it was entitled to summary judgment. Rule 74.-04(c) requires that a motion for summary judgment "state with particularity the grounds therefor." City's motion for summary judgment

failed to do so and was therefore deficient. Yet, because both parties address the court's ruling as if it were made on the basis that there was not a dangerous condition about which City must warn, we review the judgment on that basis.

constituted a dangerous condition and of whether City knew or should have known of this condition were for the jury's determination. If the jury were to find that City anticipated or should have anticipated the dangerous condition, then City would have the duty to warn plaintiff that he was approaching the end of the walkway. In determining whether the sudden ending of the walkway constituted a dangerous condition, the jury could consider whether City had reason to expect that plaintiff's attention would be diverted by the airport environment. *See Jones v. National Supermarkets, Inc.,* 729 S.W.2d 218, 221 (Mo. App.1987). If the jury were to find that the airport contained distractions, the jury then could conclude that the moving walkway, although not inherently dangerous, became dangerous when coupled with the typical airport diversions; namely, crowds, restaurants, shops, direction signs, and luggage. In addition, the jury could consider whether City knew or should have known that plaintiff's view of the end of the ramp could be blocked by people, by luggage, or by other objects; or whether the view of plaintiff, who is a short person, could be blocked by taller people in front of him. Conversely, as to plaintiff's comparative fault, it was an issue for the jury whether plaintiff failed to keep a careful lookout. *See* MAI 32.28.

■ City compares the moving walkway to an escalator and seeks to be held to the duty of care of a common carrier. *See Haley v. May Dept. Stores Co.,* 287 S.W.2d 366 (Mo.App.1956). The law imposes a strict duty of care on common carriers. *Sanford v. Bi-State Development Agency,* 705 S.W.2d 572, 574 (Mo.App.1986). The common carrier is required to exercise the highest degree of care to protect its passengers from dangers that are known or by the exercise of the highest degree of care ought to be known. *Bass v. Bi-State Development Agency,* 661 S.W.2d 609, 612 (Mo.App.1983).

As to the issue of City's liability, it is immaterial whether the relationship between plaintiff and City is characterized as that of owner/invitee or that of carrier/passenger, although the standard of care imposed on a common carrier appears to be slightly higher than that imposed on an owner. Under the facts of the case before us, however, City is the owner and operator of the airport terminal and plaintiff's status is that of an invitee. It is therefore unnecessary to resolve the issue of whether a moving walkway is sufficiently similar to an escalator, so as to impose upon City the duty of care of a common carrier. Because there remain material issues for the jury's determination, the trial court erred in granting summary judgment.

The judgment of the trial court is reversed and the cause is remanded.

PUDLOWSKI, J., concurs.

GRIMM, J., concurs in part and concurs in result only in part in separate opinion.

GRIMM, Judge, concurring.

I concur with the majority opinion in its disposition of City's procedural challenge.

As to the substantive issue, I concur in the result only. I agree that City did not comply with Rule 74.04(c). *Bruner v. City of St. Louis,* 857 S.W.2d 329 at 332 (Mo. App.E.D.1993).

City's summary judgment motion set forth numerous facts. It alleged that there was no genuine issue as to any material fact. However, the motion neither alleged or contended that City did not owe a duty to warn plaintiff. City cannot justify the trial court's decision on a theory (i.e. lack of duty) not submitted as a basis for its motion.

If a duty exists, "whether defendant created a dangerous condition would ordinarily be a question of fact for the jury." *Schmidt v. Keane,* 810 S.W.2d 701, 703 (Mo.App.E.D.1991). Plaintiff's expert witness' affidavit is sufficient to withstand a summary judgment motion on this issue.